# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL A. PINKSTON, | CV F   00 6193 REC SMS P |
| Plaintiff, | |
| v. | ORDER GRANTING MOTION FOR MOTION FOR SUMMARY JUDGMENT (Doc. 115) |
| D. FIERRO, et. al., | ORDER DISMISSING ACTION |
| Defendants. | ORDER DIRECTING CLERK OF COURT TO ENTER JUDGMENT |

Michael A. Pinkston ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983.

**A.   RELEVANT PROCEDURAL HISTORY**

Plaintiff filed the instant action on August 15, 2000.  On June 29, 201, Defendants Fierro, Gulack, Maldonado, Loomis, and Kee filed a Motion for Judgment on the Pleadings.  The Court issued Findings and Recommendations on October 31, 2001, that the Motion be granted.  The Court further recommended that Plaintiff be granted leave to amend the complaint to include further allegations of exhaustion.  The Findings and Recommendations were adopted by the District Court on January 22, 2002.  Plaintiff was directed to file an Amended Complaint with thirty days from the date the Order Adopting was issued.  Following a request for an extension of

1

time, Plaintiff filed an Amended Complaint on April 29, 2002.

Defendants filed a Rule 12(b) Motion to Dismiss the Complaint on March 3, 2003. After one extension of time, Plaintiff filed an Opposition to the Motion on August 21, 2003. The Court issued Findings and Recommendations on September 24, 2003, that the Motion to Dismiss be denied. The District Court adopted the Recommendation on February 27, 2004.

On May 7, 2004, this Court ordered the previously imposed stay of discovery lifted and reset the dispositive motion deadline. On December 8, 2004, Defendants filed a Motion for Summary Judgment. After several extensions of time, Plaintiff filed his Opposition to the Motion for Summary Judgment on August 30, 2005.

**B. SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a Summary Judgment Motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing

1  party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec.
2  Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

3  In attempting to establish the existence of this factual dispute, the opposing party may not
4  rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the
5  form of affidavits, and/or admissible discovery material, in support of its contention that the
6  dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must
7  demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the
8  suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W.
9  Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that
10 the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for
11 the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

12 In the endeavor to establish the existence of a factual dispute, the opposing party need not
13 establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual
14 dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
15 trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce
16 the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"
17 Matsushita, 475 U.S. at 587 (*quoting* Fed. R. Civ. P. 56(e) advisory committee's note on 1963
18 amendments).

19 In resolving the Motion for Summary Judgment, the Court examines the pleadings,
20 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
21 any.  Rule 56(c).  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at
22 255, and all reasonable inferences that may be drawn from the facts placed before the court must
23 be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (*citing* United States v.
24 Diebold, Inc., 369 U.S. 654, 655 (1962)(*per curiam*).  Nevertheless, inferences are not drawn out
25 of the air, and it is the opposing party's obligation to produce a factual predicate from which the
26 inference may be drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D.
27 Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).

28 Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

3

show that there is some metaphysical doubt as to the material facts.  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (*citation omitted*).

**C.  UNDISPUTED FACTS**[1]

1. Plaintiff is a state prisoner currently incarcerated at California State Prison - Corcoran at Corcoran, California.  Plaintiff was housed at Corcoran's Security Housing Unit ("SHU") at the time of the events alleged in the First Amended Complaint.

2. On August 17, 1998, following his afternoon walk-alone time in the SHU's exercise yard, Plaintiff was escorted back in handcuffs to his cell by Officers Gulack and Loomis.[2]

3. Once inside his cell, Plaintiff refused to relinquish his handcuffs.[3]

4. Officer Gulack turned off the water to the sink and toilet using the "chase key."[4] According to Plaintiff, it is common practice for inmates to "flood" the tier by turning on the sink water when the incident occurs in the housing unit.  An officer may, therefore, turn off the plumbing chase that runs between the cells as a

---

[1] In addition to Plaintiff's Opposition, which attempts to dispute many of the facts set forth by Defendants, Plaintiff has submitted a Separate Statement of "Issues of Material Fact" that warrant a jury trial.  (Doc. 139.)  However, the majority of the facts set forth by Plaintiff do not concern the Eighth Amendment claim at issue in this case and, in some instances, allege new claims for relief.  For example, Plaintiff alleges that he was entitled to a shower of 10 minutes, that the decontamination procedures were incorrectly carried out, whether Supervisors instructed staff to turn the water on, whether staff was properly trained, etc. etc.  The Court will include only those facts that are undisputed and relevant to the resolution of the claim at issue in this Motion and case.

[2] Plaintiff disputes this fact stating that the events concerning the missing legal documents occurred prior to the escort back to his cell are not included in the Defendant's Statement of Undisputed Facts.  However, whether there were or were not legal documents missing from Plaintiff's cell is irrelevant to the determination that his Eighth Amendment rights were violated.  Accordingly, this fact is undisputed for the purposes of this Motion.

[3] Again, Plaintiff disputed this fact because the "reason" why he refused to relinquish his handcuffs is not included in the statement.  Plaintiff's reason for refusing to relinquish the cuffs, however, is irrelevant to the resolution of this Motion for Summary Judgment.

[4] Plaintiff disputes that he provided the testimony Defendant refers to in footnote 1 of the Motion for Summary Judgment concerning the "chase key."  The Court has examined the deposition of Plaintiff and finds that Defendants characterization of Plaintiff's statements concerning the chase key are accurate. (Exh. A, at 45:10-23; 46:12-17, Je Decl.)

4

1  precaution to prevent such flooding. Plaintiff refers to the key used to turn off the water to his cell as the "chase key."[5]

5. Plaintiff continued to refuse to relinquish his handcuffs despite several requests and direct orders by correctional staff which necessitated the use of Oleoresin Capsicum ("O.C.") pepper spray to bring Plaintiff into compliance.[6]

6. The required authorization, including medical clearance, was received for correctional officers to administer pepper spray on Plaintiff.

7. Following two bursts of O.C. fogger administered into the cell, Plaintiff complied and relinquished the handcuffs.

8. Plaintiff was escorted by officers to an open exercise yard for the decontamination process pursuant to established prison procedures.[7]

9. Plaintiff was exposed to an open area with fresh air.[8]

10. Under the Direction of the Medical Technical Assistant ("MTA") Peoples, Plaintiff was showered with cool running water which ran down his body for a few minutes.[9]

---

[5] Plaintiff disputes this fact on the basis that Defendant Gulack did not, prior to the submission of this Motion, concede that he turned off the water to Plaintiff's cell. Defendants inclusion of this fact in the Statement of Undisputed Facts is, itself, a concession for the purposes of this Motion. Plaintiff does not dispute that Defendant Gulack was not the one who turned off the water, thus, the fact is undisputed.

[6] Defendant disputes that Defendants Loomis or Gulack ordered him to relinquish his cuffs. However, the statement provided here does not make this allegation, it says merely that he was repeatedly ordered to relinquish them and refused. The statement is undisputed.

[7] In his Opposition, Plaintiff disputes that he was given a "shower" in compliance with prison procedures. However, Plaintiff concedes, in his Deposition that he was taken out into an open area on the yard where the "water was turned on" which came from a "shower head" attached to the wall. (Exh. A at 65:19-20, 24-25; 66:3-4, Je Decl.) Accordingly, this fact is undisputed.

[8] The air quality Plaintiff states he was unaware of is irrelevant. As Plaintiff complains about numerous facts in his "Issues of Material Fact" that are irrelevant to the resolution of the Eighth Amendment claim at issue in this case, the Court will not address each irrelevant disputed fact as alleged by Plaintiff in his Opposition.

[9] Plaintiff disputes again that he was given a shower because he says that only his facial area and eyes were rinsed.(Opposition at 12, ¶ 36.) However, in the deposition, Plaintiff concedes that he "leaned forward" to get under the shower head (Exh. A at 66:18-23, Je Decl.), that his shirt was wet, but not saturated (Exh. A at 67:7-11, Je Decl.), and that "water was running down." (Exh. A at 67:8-9, Je Decl.) At issue in this case is whether the Defendants were deliberately indifferent to Plaintiff's serious medical needs following the decontamination, not whether the decontamination process was in accordance with prison regulations or Plaintiff's interpretation of them.

11. A medical examination of Plaintiff was conducted by MTA Peoples who prepared a Medical Report of Injury (CDC Form 7219). The report indicates that the physical assessment of Plaintiff reveals no injuries, skin color is good, no respiratory distress, lungs clear, and vital signs are within normal limits. The treatment given is noted as "I/M (inmate) decontaminated with large amounts of cool running water to head & body. I/M placed in well ventilated area."[10]

12. Although Plaintiff indicated to MTA Peoples about his preexisting tinea rash, he did not complain of any serious pain or communicate to MTA Peoples that he needed further medical attention as a result of the use of the OC spray.

13. Plaintiff was medically cleared by MTA Peoples to return to his cell.

14. A Crime/Incident Report (CDC Form 837), Log. No. COR-04A-98-08-0456, was prepared by officers following the incident. The Crime/Incident Report documents detail the events which necessitated the use of pepper spray and the decontamination process which was implemented.

15. Plaintiff was issued a disciplinary citation for failing to relinquish his handcuffs on August 17, 1998. Rules Violation Report (CDC Form 115), Log No. 4A1-98-09-98, indicates that Plaintiff was found guilty of the charge of "delaying peace officers in performance of their duties."

16. Plaintiff filed an inmate appeal, Log No. 98-2233, (CDC Form 602) complaining that officers failed to turn the water back on when he was returned form the decontamination process. Plaintiff claimed he wanted to wash off the residual paper spray but was unable to do so for several hours. Plaintiff claimed that his repeated requests for the water to be turned on were ignored and he subsequently requested disciplinary action against Officer Fierro. Based on a review of the relevant documentation, the appeal was denied at the First Level of Review.

17. The appeal at the Second Level of Review was also denied. The decision notes

---

[10]Plaintiff disputes the amount of water used, however, he does not dispute the fact of this report or its contents. Thus, the fact is undisputed.

6

|   |   |   |
|---|---|---|
| | | that Plaintiff was appropriately decontaminated with cold running water and fresh air. It was determined that Officer Fierro was working at the control booth and could not abandon his post to carry out Plaintiff's request to turn on the water. Officer Fierro stated that the keys were in the possession of another officer who was in the program office completing the report on the incident. Officer Fierro stated that prior to being relieved from his shift, he left instructions for the water to be turned on in Plaintiff's cell. Plaintiff failed to present any compelling evidence that Officer Fierro acted in a negligent manner. |
| | 18. | Plaintiff's appeal at the Director's Level of Review was denied. |
| | 19. | Plaintiff did not suffer any serious injury during the duration of the time in which the water was shut off.[11] |

**D.  ANALYSIS**

    **1.  Summary of Complaint**

On August 17, 1998, at approximately 6:15 in the evening, Plaintiff refused to relinquish his handcuffs. Following repeated efforts by staff at Corcoran to gain compliance, staff obtained approval and utilized OC pepper spray on Plaintiff at approximately 8:19 p.m. Prior to the administration of the OC spray, the water to Plaintiff's cell and toilet were shut off. Following two bursts of OC spray, Plaintiff complied by relinquishing his handcuffs. Plaintiff was then removed to an outdoor area where he was decontaminated with water, medically examined by MTA Peoples at approximately 8:20 p.m., cleared for rehousing and escorted back to his cell.

Plaintiff alleges that when he returned to his cell and removed his clothing, he realized the water had not yet been turned on. Plaintiff attempted to get the attention of Defendant Fierro who pointed at other officers on the tier approaching Plaintiff's cell. Plaintiff states that he verbally attempted to notify Defendant Maldonado that he needed his water turned on to clean his body but Defendant Maldonado rebuffed him with comments that Plaintiff was "no man."

---

[11] Plaintiff alleges that the prolonged exposure to pepper spray constitutes excessive force. (Opposition at 22:21-22; 23:28.) However, this allegation is not part of the Complaint and will not be addressed at this juncture in the case.

7

Plaintiff states he then notified a female officer that he needed his water turned on because he was "burning" and she acknowledged that she would inform "them."

Approximately five minutes later, Plaintiff states that he saw Defendant Loomis and informed him that he needed his water turned on and Defendant Loomis walked away making a crying-baby sound.

Plaintiff then yelled to Defendant Fierro that he needed his water put on and Fierro replied that Defendant Gulack had the key and was in another area writing his report.

Plaintiff states that at some point prior to 10:00 p.m., he saw Defendant Kee removing his protective vest and putting it in a locker. Plaintiff got on his hands and knees and called out to him. When Defendant Kee moved his head slightly as if he might have heard him, Plaintiff stood up and began waiving his arms in the air with a towel in his hand. Defendant Kee laughed and waived to Plaintiff.

Plaintiff later saw Defendant Gulack and again yelled to him regarding the water. Plaintiff states Defendant heard him because he "paused momentarily and looked into 'B' section" and then continued handing the officers with him items from his belt.

Plaintiff asserts that each Defendant was informed that he needed the water to be turned on but they "rejected . . ignored, had the opportunity to take some corrective action, and failed to do so." As a result, Plaintiff alleges that he suffered pain and emotional distress. Plaintiff is seeking compensatory and punitive damages.

**2. Claim for Relief**

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976).

The "deliberate indifference" standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Second, the prison official must act with a "sufficiently culpable state of mind," which entails more than mere negligence, but less than conduct undertaken for the very purpose of causing harm. Farmer

1 v. Brennan, 511 U.S. at 837. A prison official does not act in a deliberately indifferent manner
2 unless the official "knows of and disregards an excessive risk to inmate health or safety." Id. In
3 applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil
4 rights have been abridged, "the indifference to his medical needs must be substantial. Mere
5 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action."
6 Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980), citing Estelle, 429 U.S. at
7 105-06.

8 　　　　Deliberate indifference can be manifested by prison guards intentionally denying or
9 delaying access to medical care or intentionally interfering with the treatment once prescribed.
10 Estelle v. Gamble, 429 U.S. at 104-05. However, where a prisoner alleges a delay in receiving
11 medical treatment, the prisoner must allege that the delay led to further injury. McGuckin v.
12 Smith, 974 F.2d 1050, 1060 (9th Cir. 1992), *overruled on other grounds*, WMX Techs, Inc. v.
13 Miller, 104 F.3d 1133, 1136 (9th Cir. 1997); Shapely v. Nevada Bd. of State Prison Comm'rs,
14 766 F.2d 404, 407 (9th Cir. 1985). Moreover, mere differences of opinion between a prisoner
15 and prison medical staff as to proper medical care do not give rise to a § 1983 claim. See Jackson
16 v. McIntosh, 90 F.3d 330, 332 (9th Cir.1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir.1989);
17 Franklin v. Oregon, 662 F.2d 1337, 1334 (9th Cir.1981).

18 　　　　Defendants allege that Plaintiff has not suffered a sufficiently serious deprivation because
19 he was decontaminated following the dispensation of the OC pepper spray and suffered no
20 permanent injury. In support, Defendants provide a copy of Plaintiff's deposition. Plaintiff
21 concedes in his Deposition that immediately following the exposure to the spray, he was taken to
22 an outdoor exercise yard to begin decontamination. (Exh. A at 65:8-17, Je Decl.) Plaintiff was
23 next placed under a shower of cool water and rinsed. (Exh. A at 65:18-66:16; Exh. I, Je Decl.)
24 MTA Peoples gave Plaintiff specific instructions during the decontamination for Plaintiff to get
25 the best relief from the exposure. (Exh. A at 67:1-11, 23-25, Je Decl.) Plaintiff testified that his
26 eyes were rinsed and the water ran down his body for a few minutes providing him with relief
27 from the pepper spray. (Exh. A at 66:14-68:17, Je Decl.)

28 　　　　Plaintiff testified that MTA Peoples examined him immediately after he was

decontaminated and found his pulse rate, heart beat and vital signs to be normal. (Exh. A at 70:18-25, 70:25-71:7, Je Decl.) MTA Peoples' report indicates that a physical assessment of Plaintiff revealed no injuries, skin color was good, no respiratory distress, lungs are clear and vital signs are within normal limits. (Exh. I, Je Declaration.) Other than aggravation to his preexisting tinea rash, Plaintiff did not indicate to MTA Peoples that he had any serious pain nor did he request to be seen by other medical staff. (Exh. A at 71:8-18, Je Decl.) MTA Peoples cleared Plaintiff for return to his cell. (Exh. A at 73:17-20, Je Decl.)

Defendants assert and present evidence that Plaintiff did not sustain serious injury sufficient to violate the Eighth Amendment. Plaintiff testified that following return to his cell, his skin was warm, his veins were slightly raised, there was no skin loss, no visible bleeding and his skin was sensitive to the touch. (Exh. A at 79:14-80:8, Je Decl.) Plaintiff further testified that once the water came on and he washed himself, the burning sensation subsided. (Exh. A at 107:13-16; 108:14-17, Je Decl.) Defendants present evidence that Plaintiff did not request to be seen by a medical professional until a day or two after the incident and only then to request more ointment for his tinea rash. (Exh. A at 108:18-109:11, Je Decl.) At the time he was examined, the doctor found only that the rash appeared to be a bit agitated. (Exh. A at 110:1-11, Je Decl.)

Defendants further present evidence that OC pepper spray is a biodegradable substance which does not require washing. (Exh. F, Je Decl.) Decontamination is accomplished by exposing the individual to fresh moving air or flushing the affected body areas with cool water and that all symptoms should dissipate after 45 minutes. Id.

Defendants also present evidence that Defendants were not deliberately indifferent to any alleged serious medical need. Plaintiff testified that Defendant Gulack turned the water off. (Exh. A at 51:7-12, Je Decl.) Following his return to his cell, Plaintiff asked Officer Fierro, who was in the control booth, to turn the water back on in his cell. (Exh. A at 81:20-22, Je Decl.) Defendant Fierro informed him that Defendant Gulack had the key and was out writing his report. (Exh. A at 82:4-5; 82:25-83:1-2, Je Decl.) Defendant Fierro told Plaintiff to ask one of the officers out on the tier. (Exh. A at 83:11-13, Je Decl.) Plaintiff testified that shortly thereafter, Defendant Fierro was relieved from his post. (Exh. A at 95:2-4, Je Decl.)

Plaintiff testified that he asked Officer Maldonado, who was delivering mail on the tier to turn the water back on because his genital area was burning. (Exh. A at 83:13-15, Je Decl.) Plaintiff further testified that he did not request medical attention or indicate to Defendant Maldonado that it was an emergency but only requested that his water be turned on so he could wash himself. (Exh. A at 84:6-9, Je Decl.) Based on his request for water, Plaintiff testified that Defendant Maldonado should have known it was an emergency. (Exh. A at 85:3-6, Je Decl.) Defendant Maldonado replied "I don't want to talk to you, you ain't no many anyway, crying about the pepper spray." (Exh. A at 83:15-25, Je Decl.) Plaintiff characterized Defendant Maldonado's response as "unprofessional, callous, [and] malignant." (Exh. A at 86:22, Je Decl.)

Approximately 1 hour later (Exh. A at 88:10-11, Je Decl.), Plaintiff asked Officer Loomis who brought him a "cell search form" that he needed his water turned back on because his privates were burning. (Exh. A at 87:13-15, Je Decl.) Defendant Loomis dismissed his request by shaking his head and making a baby crying sound. (Exh. A at 88:17-23, Je Decl.) Plaintiff testified that although he was experiencing extreme pain he was able to speak calmly to Officer Loomis. (Exh. A at 89:20-21, Je Decl.) Plaintiff testified that although he didn't indicate to Defendant Loomis the urgency of his condition, Defendant Loomis should have known simply because he was aware that Plaintiff had been pepper sprayed. (Exh. A at 90:25-91:5, Je Decl.)

Defendants next present evidence that Plaintiff attempted to get officer Kee's attention by yelling "up under the door" that he "needed his water back on" and then stood up and waived his towel. (Exh. A at 95:20-25; 96:1-3; 96:15-19, Je Decl.) Defendant Kee looked up towards him and laughed but did not otherwise respond. (Exh. A at 96:3-4, Je Decl.) Plaintiff could not recall whether he informed Defendant Kee that he was burning but that Defendant Kee knew his water was off. (Exh. A at 97:5-13, Je Decl.)

Finally, Defendants present evidence that Plaintiff believed the Defendants should have known of the urgency of his condition simply because they all knew he had been sprayed and that the spray just "doesn't evaporate." (Exh. A at 91:1-5, Je Decl.) The Court finds that Defendants have met their initial burden of informing the court of the basis for their motion, and identifying those portions of the record which they believe demonstrate the absence of a genuine issue of

11

1  material fact. The burden therefore shifts to plaintiff to establish that a genuine issue as to any
2  material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475
3  U.S. 574, 586 (1986). As stated above, in attempting to establish the existence of this factual
4  dispute, plaintiff may not rely upon the mere allegations or denials of his pleadings, but is
5  required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery
6  material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at
7  586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).

8         Plaintiff alleges in his Opposition that he was only "partially decontaminated."
9  (Opposition at ¶ 75.) However, the evidence before the Court is that Plaintiff was
10 decontaminated immediately following the exposure to pepper spray, his vital signs were
11 checked, he did not have any visible injuries or respiratory distress, his vital signs were normal
12 and he did not complain to the attending MTA that further decontamination was needed or that
13 he was in any pain. (Exh. A at 93:58; 70:18-25; 70:25-71:7; Exh. I, Je Decl.) Plaintiff
14 acknowledges that he did not have any inability to see or breathe or any other physical signs that
15 would alert the attending MTA to Plaintiff's serious medical need. (Opposition at 41:13-14.)
16 Plaintiff concedes that he was informed by MTA peoples with respect to the burning that he
17 "would be alright in awhile, it will go away." (Exh. A at 118:21, Je Decl.)

18        When Plaintiff returned to his cell, he noted that his "skin was warm, veins slightly raised
19 but that he saw no skin loss, nor visible bleeding but that his skin was somewhat sensitive to the
20 touch." (Exh. A at 79:14- 80:1-9, Je Decl; Opposition at 44:5-7.) Plaintiff testified that
21 although he experienced burning, he was able to make a "calm" request that Defendant Loomis
22 "turn his water on." (Exh. A at 87:13-15; 89:17-21, Je Decl.)

23        Plaintiff further testified that when he was able to wash himself, the symptoms subsided.
24 (Opposition at 44:6-8; 107:16.) Plaintiff states he sought medical attention a "the next day," for
25 the purpose of obtaining more fungal cream (Exh. A at 109:5-11, Je Decl) and was referred to a
26 doctor for that purpose whom he saw on October 9, 1998, almost 1 1/2 months later. (Exhibit
27 MAP 007, Opposition; Opposition at 44:10-11.) Plaintiff then saw a Urologist for his difficulty
28

in obtaining an erection.[12] (Opposition at 4:15-16; Exh. A at 109:22-25, Je Decl; Exh. MAP 008, Opposition.) Plaintiff was prescribed antidepressants and antibiotics in relation to his erectile dysfunction. (Exh. A at 109:23-25; 112:11-14, Je Decl; Exh. MAP008, Opposition.) Other than his allegations, however, Plaintiff provides no evidence that he suffered any physical injury or that his erectile dysfunction was a direct result of the pepper spray incident. Accordingly, Plaintiff fails to present any evidence that the risk to his health was "objectively serious."

Even assuming that Plaintiff's contention of being in pain is sufficient to create a disputed issue of fact, Plaintiff fails to provide evidence that Defendants *knew of and disregarded* a serious risk to his health. "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (*quoting* Farmer v. Brennan, 511 U.S. 825, 837 (1994). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (*quoting* Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).

Plaintiff concedes in his Opposition that the "Eighth Amendment in this case involves Plaintiff's access to restoration of water," and that the case involved personnel that were "deliberately ignoring Plaintiff's call for water restoration." (Opposition at 29:10-11; 30:1-2; 32:96;) Plaintiff argues that the continued effects of the pepper spray "warranted prompt medical attention" but "none of the Defendants sought medical staff intervention or supervisory advice," and that he was "denied medical attention after notifying Defendants he needed his water turned back on." (Opposition at ¶¶ 65, 66, 74.) The undisputed evidence, however, shows that although Plaintiff made contact with the Defendants at some point in time following his exposure and subsequent decontamination, he only requested that his water be turned on, not that he be given any medical attention for the alleged burning. (Exh. A at 81:21-22; 83:12-13; 81:13-15; 89:20-21; 90-15-16; 94:20; 95:10-11; 95:25-96:1; 96:20-21, Je Decl.) Plaintiff

---

[12] The doctors notes indicate "prolonged masturbation - pain on ejaculation." (Exh. MAP 008, Opposition.)

concedes further that although he still experienced some burning while being examined by MTA Peoples, he did not request further medical attention because he "knew he was returning to his cell . . . and just thought he'd do it (cleanse himself.)" (Exh. A at 71:19-23, Je Decl; Opposition at 15:5-7, 17-18.) Finally, Plaintiff concedes that Defendants should have "known" he was in need of medical care based alone on the fact that he was pepper sprayed. (Exh. A at 85:3-6, Je Decl; 90:23-25, 91:1-5; 91:12-19; 94:18-20; Opposition at 33:1-6.)

It is clear from the evidence before the Court that did not sufficiently put Defendants on notice that he was in need of medical attention. As noted above, Plaintiff was decontaminated according to procedure and was "cleared" for return to his cell. Defendants have produced evidence that the OC pepper spray is biodegradable, does not require washing and that symptoms should dissipate after 45 minutes. (Exh. F, Je Decl.) The Court finds Plaintiff's failure to request specific medical attention from Defendants is insufficient to put Defendants on notice that further medical attention was needed. As noted above, Plaintiff's contact with Defendants consisted of requests that the water be turned on, not that he was in need of medical attention. Accordingly, the Court finds Plaintiff has failed to meet his burden of establishing the existence of a disputed material fact warranting trial on the issue of whether Defendants knew of and disregarded a serious risk to his health. The Court will therefore recommend that Summary Judgment be granted.

**E. CONCLUSION AND ORDER**

Accordingly, the Court HEREBY ORDERS:

1. The Motion for Summary Judgment is GRANTED;
2. The instant action is DISMISSED; and
3. The Clerk of Court is DIRECTED to enter Judgment in accordance with this Order.

IT IS SO ORDERED.

**Dated:  September 28, 2005**          /s/ Robert E. Coyle
668554                                   UNITED STATES DISTRICT JUDGE