# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MICHAEL A. PINKSTON, | ) | CV F   00 6193 REC SMS P |
| Plaintiff, | ) | |
| v. | ) | FINDINGS AND RECOMMENDATIONS REGARDING SECOND MOTION FOR SUMMARY JUDGMENT (Doc. 161) |
| D. FIERRO, et. al., | ) | |
| Defendants. | ) | |

Michael A. Pinkston ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983.

**A.   RELEVANT PROCEDURAL HISTORY**

Plaintiff filed the instant action on August 15, 2000. On June 29, 2001, Defendants Fierro, Gulack, Maldonado, Loomis, and Kee filed a Motion for Judgment on the Pleadings. The Court issued Findings and Recommendations on October 31, 2001, that the Motion be granted. The Court further recommended that Plaintiff be granted leave to amend the complaint to include further information regarding exhaustion. The Findings and Recommendations were adopted by the District Court on January 22, 2002. Plaintiff was directed to file an Amended Complaint with thirty days from the date the Order Adopting was issued. Following a request for an extension of time, Plaintiff filed an Amended Complaint on April 29, 2002.

Defendants filed a Rule 12(b) Motion to Dismiss the Complaint on March 3, 2003. After one extension of time, Plaintiff filed an Opposition to the Motion on August 21, 2003. The Court issued Findings and Recommendations on September 24, 2003, that the Motion to Dismiss be denied. The District Court adopted the Recommendation on February 27, 2004.

On May 7, 2004, this Court ordered the previously imposed stay of discovery lifted and reset the dispositive motion deadline. On December 8, 2004, Defendants filed a Motion for Summary Judgment. After several extensions of time, Plaintiff filed his Opposition to the Motion for Summary Judgment on August 30, 2005. The Court issued an Order granting the Motion and dismissing the case on September 28, 2005. Plaintiff moved and was granted in part, relief from judgment on January 30, 2006. The District Court denied Plaintiff's Motion to the extent it argued that the Court erred in granting summary judgment with respect to the Eighth Amendment claim regarding inadequate medical care. However, the District Court found that Plaintiff had raised a claim of excessive force in violation of the Eighth Amendment which was not addressed by Defendants or the Court. Thus, the District Court remanded the case to the undersigned for further proceedings in connection with the Eighth Amendment excessive force claim. Defendants moved for summary judgment on this claim on July 17, 2006. Plaintiff filed his Opposition on October 13, 2006.

**B. SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a Summary Judgment Motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and

2

upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the Motion for Summary Judgment, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

1  any. Rule 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at
2  255, and all reasonable inferences that may be drawn from the facts placed before the court must
3  be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (*citing* United States v.
4  Diebold, Inc., 369 U.S. 654, 655 (1962)(*per curiam*). Nevertheless, inferences are not drawn out
5  of the air, and it is the opposing party's obligation to produce a factual predicate from which the
6  inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D.
7  Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).

    Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (*citation omitted*).

**C. UNDISPUTED FACTS[1]**

1. Plaintiff is a state prisoner currently incarcerated at California State Prison - Corcoran at Corcoran, California. Plaintiff was housed at Corcoran's Security Housing Unit ("SHU") at the time of the events alleged in the First Amended Complaint.

2. On August 17, 1998, following his afternoon walk-alone time in the SHU's exercise yard, Plaintiff was escorted back in handcuffs to his cell by Officers Gulack and Loomis.

3. Once inside his cell, Plaintiff refused to relinquish his handcuffs.

4. Officer Gulack turned off the water to the sink and toilet using the "chase key."[2]

5. Plaintiff continued to refuse to relinquish his handcuffs despite several requests

---

[1] Defendants and Plaintiff both incorporate their statements of undisputed facts as submitted with regard to the initial Motion for Summary Judgment filed on December 8, 2004. (Motion at 3-4, Opposition to Second Motion for Summary Judgment at ¶ 10.) Thus, the Court has included the Statement of Undisputed Facts as previously set forth in the Order dismissing the case issued September 28, 2005.

[2] According to Plaintiff, it is common practice for inmates to "flood" the tier by turning on the sink water when the incident occurs in the housing unit. An officer may, therefore, turn off the plumbing chase that runs between the cells as a precaution to prevent such flooding. Plaintiff refers to the key used to turn off the water to his cell as the "chase key." Pl.'s Dep., 45:10-23, 46:12-17.)

4

and direct orders by correctional staff which necessitated the use of Oleoresin Capsicum ("O.C.") pepper spray to bring Plaintiff into compliance.

6. The required authorization, including medical clearance, was received for correctional officers to administer pepper spray on Plaintiff.

7. Following two bursts of O.C. fogger administered into the cell, Plaintiff complied and relinquished the handcuffs.

8. Plaintiff was escorted by officers to an open exercise yard for the decontamination process pursuant to established prison procedures.[3]

9. Plaintiff was exposed to an open area with fresh air.

10. Under the Direction of the Medical Technical Assistant ("MTA") Peoples, Plaintiff was showered with cool running water which ran down his body for a few minutes.[4]

11. A medical examination of Plaintiff was conducted by MTA Peoples who prepared a Medical Report of Injury (CDC Form 7219). The report indicates that the physical assessment of Plaintiff reveals no injuries, skin color is good, no respiratory distress, lungs clear, and vital signs are within normal limits. The treatment given is noted as "I/M (inmate) decontaminated with large amounts of cool running water to head & body. I/M placed in well ventilated area."[5]

12. Although Plaintiff informed MTA Peoples of his preexisting tinea rash, he did not complain of any serious pain or communicate to MTA Peoples that he needed

---

[3] In his Opposition to the First Motion for Summary Judgment, Plaintiff disputes that he was given a "shower" in compliance with prison procedures. However, Plaintiff concedes, in his Deposition that he was taken out into an open area on the yard where the "water was turned on" which came from a "shower head" attached to the wall. (Exh. A at 65:19-20, 24-25; 66:3-4, Je Decl.) Accordingly, this fact is undisputed.

[4] Plaintiff disputes again that he was given a shower because he says that only his facial area and eyes were rinsed.(Opposition to the First Motion for Summary Judgment at 12, ¶ 36.) However, in the deposition, Plaintiff concedes that he "leaned forward" to get under the shower head (Exh. A at 66:18-23, Je Decl.), that his shirt was wet, but not saturated (Exh. A at 67:7-11, Je Decl.), and that "water was running down." (Exh. A at 67:8-9, Je Decl.) The issue before the Court is whether the Defendants violated Plaintiff's Eighth Amendment right for the alleged prolonged exposure to pepper spray. Thus, the adequacy of the decontamination procedure is not before the Court.

[5] Plaintiff disputes the amount of water used, however, he does not dispute the fact of this report or its contents. Thus, the fact is undisputed.

1 further medical attention as a result of the use of the OC spray.

2   13.  Plaintiff was medically cleared by MTA Peoples to return to his cell.

3   14.  A Crime/Incident Report (CDC Form 837), Log. No. COR-04A-98-08-0456, was prepared by officers following the incident. The Crime/Incident Report documents detail the events which necessitated the use of pepper spray and the decontamination process which was implemented.

15.  Plaintiff was issued a disciplinary citation for failing to relinquish his handcuffs on August 17, 1998. Rules Violation Report (CDC Form 115), Log No. 4A1-98-09-98, indicates that Plaintiff was found guilty of the charge of "delaying peace officers in performance of their duties."

16.  Plaintiff filed an inmate appeal, Log No. 98-2233, (CDC Form 602) complaining that officers failed to turn the water back on when he was returned form the decontamination process. Plaintiff claimed he wanted to wash off the residual paper spray but was unable to do so for several hours. Plaintiff claimed that his repeated requests for the water to be turned on were ignored and he subsequently requested disciplinary action against Officer Fierro. Based on a review of the relevant documentation, the appeal was denied at the First Level of Review.

17.  The appeal at the Second Level of Review was also denied. The decision notes that Plaintiff was appropriately decontaminated with cold running water and fresh air. It was determined that Officer Fierro was working at the control booth and could not abandon his post to carry out Plaintiff's request to turn on the water. Officer Fierro stated that the keys were in the possession of another officer who was in the program office completing the report on the incident. Officer Fierro stated that prior to being relieved from his shift, he left instructions for the water to be turned on in Plaintiff's cell. Plaintiff failed to present any compelling evidence that Officer Fierro acted in a negligent manner.

18.  Plaintiff's appeal at the Director's Level of Review was denied.

19.  Plaintiff did not suffer any serious injury during the duration of the time in which

the water was shut off.

**D. ANALYSIS**

**1. Summary of Complaint**

On August 17, 1998, at approximately 6:15 in the evening, Plaintiff refused to relinquish his handcuffs. Following repeated efforts by staff at Corcoran to gain compliance, staff obtained approval and utilized OC pepper spray on Plaintiff at approximately 8:19 p.m. Prior to the administration of the OC spray, the water to Plaintiff's cell and toilet were shut off. Following two bursts of OC spray, Plaintiff complied by relinquishing his handcuffs. Plaintiff was then removed to an outdoor area where he was decontaminated with water, medically examined by MTA Peoples at approximately 8:20 p.m., cleared for rehousing and escorted back to his cell.

Plaintiff states that when he returned to his cell and removed his clothing, he realized the water had not yet been turned on. Plaintiff attempted to get the attention of Defendant Fierro who pointed at other officers on the tier approaching Plaintiff's cell. The Amended Complaint alleges that Plaintiff verbally attempted to notify Defendant Maldonado that he needed his water turned on to clean his body, but Defendant Maldonado rebuffed him with comments that Plaintiff was "no man." The Amended Complaint states that Plaintiff then notified a female officer that he needed his water turned on because he was "burning" and she acknowledged that she would inform "them."

Approximately five minutes later, Plaintiff states that he saw Defendant Loomis and informed him that he needed his water turned on and Defendant Loomis walked away making a crying-baby sound.

Plaintiff then yelled to Defendant Fierro that he needed his water put on, and Fierro replied that Defendant Gulack had the key and was in another area writing his report.

Plaintiff states that at some point prior to 10:00 p.m., he saw Defendant Kee removing his protective vest and putting it in a locker. Plaintiff got on his hands and knees and called out to him. When Defendant Kee moved his head slightly as if he might have heard him, Plaintiff stood up and began waiving his arms in the air with a towel in his hand. Defendant Kee laughed and waived to Plaintiff.

Plaintiff later saw Defendant Gulack and again yelled to him regarding the water. Plaintiff states Defendant heard him because he "paused momentarily and looked into 'B' section" and then continued handing the officers with him items from his belt.

Plaintiff asserts that each Defendant was informed that he needed the water to be turned on but they "rejected . . ignored, had the opportunity to take some corrective action, and failed to do so." As a result, Plaintiff alleges that he suffered pain and emotional distress. Plaintiff is seeking compensatory and punitive damages.

**2. Excessive Force Claim for Relief**

Plaintiff alleges in his First Amended Complaint in paragraph #54 that Defendant Fierro's conduct was "reckless and demonstrated a callous indifference to Plaintiff's federally protected right to receive due care, prompt medical attention when sought or the need is apparent, and to be free (inter alia) from excessive use of force either by a primary basis or subsequent conduct that depicts such ..." (Amended Compl. at ¶ 54.) Although it is questionable that a conclusory allegation such as that made in the Amended Complaint sufficiently states a cognizable claim of excessive force, the District Court construed it as such based on the allegation made in Plaintiff's Opposition to the First Summary Judgment. Plaintiff alleged in the Opposition that the "prolonged exposure to pepper spray" constituted excessive force. (Opposition to First Motion for Summary Judgment at 22:21-22, 23:28.) The District Court granted Plaintiff's request for relief from judgment with regard to the claim of excessive force. As such, the Court addresses Plaintiff's claim as clarified in his Opposition.

The use of excessive force by a prison official violates the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995 (1992). Determining whether there has been an Eighth Amendment violation turns upon " 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.' " See id. at 6 (*quoting* Whitley v. Albers, 475 U.S. 312, 320-21, 106 S.Ct. 1078 (1986)).

To prevail on an excessive force claim, an inmate must show the official applied force "maliciously and sadistically" for the purpose of inflicting pain, rather than in a "good faith effort to maintain or restore discipline." Id. at 4-5, 7, 112 S.Ct. at 999. Such factors as the need for

8

the application of the force, the relationship between the need for the application of force and the amount of force used, and the extent of injury inflicted are relevant to the ultimate determination. Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078 (1986). An inmate, however, does not need to have suffered an injury to establish an Eighth Amendment violation. Hudson, 503 U.S. at 7.

The Supreme Court has further held that not "every malevolent touch by a prison guard gives rise to a federal cause of action. Id. at 9. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." Id. (*citing* Johnson v. Glick, 481 F.2d 1028, 1033 (2nd Cir. 1973) (*cert. denied sub nom.* Johnson, 414 U.S. 1033 (1973)). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" Id. at 9-10.

With regard to the use of pepper spray, the Ninth Circuit has concluded that the use of pepper spray "may be reasonable as a general policy to bring an arrestee under control, but in a situation in which an arrestee surrenders and is rendered helpless, any reasonable officer would know that a continued use of the weapon or a refusal without cause to alleviate its harmful effects constitutes excessive force." LaLonde v. County of Riverside, 204 F.3d 947, 961 (9th Cir.2000).

Here, Defendants argue that the force applied, i.e., the use of OC pepper spray, was minimal and used in an effort to maintain institutional safety and security. In support of this assertion, Defendants cite to evidence that on August 17, 1998, Plaintiff repeatedly refused to relinquish the handcuffs after officers escorted him back to his cell from yard time. (Je Decl.[6] ¶ 7, Exh. H, First Motion for Summary Judgment.) After adamantly refusing these Orders, Plaintiff then "slipped the handcuffs to the front of his body by bending down with his arms lowered, and stepping back over the handcuffs." Id. Defendants Gulack and Loomis exited the section and summoned Sergeant Greim who also ordered Plaintiff to allow staff to remove the

---

[6]The "Je Decl." appears as Document 116 submitted in support of the first Motion for Summary Judgment and relied on by Defendants in the Second Motion for Summary Judgment.

handcuffs. Id. Plaintiff again refused and was in a "highly agitated state." Id. At this time, Sgt. Griem sought permission to utilize OC pepper spray. Id. Lieutenant Bloxom then arrived at the cell location and ordered Plaintiff several times to allow the removal of the handcuffs which Plaintiff again refused. Id. Plaintiff stood in his cell with a T-shirt wrapped around his nose and mouth and stated to Lt. Bloxom "You know what time it is." Id. Lt. Bloxom then sought and received further authority to use the OC pepper spray. Id. Lt. Bloxom then directed Sgt. Phillips to be the video camera operator. Id. Plaintiff was given a final opportunity to comply but did not. Id. Lt. Bloxom administered one (1), two (2) second burst of OC pepper spray into the cell. Approximately four (4) minutes later and still no compliance, Lt. Bloxom administered another one (1) second burst of pepper spray into the cell. Plaintiff then placed the handcuffs behind his back and positioned himself at the cell door for removal of the handcuffs. Id. Plaintiff was then removed from the cell and taken to an open area for decontamination. Id.

Defendants distinguish Plaintiff's case from LaLonde in that Plaintiff was properly decontaminated immediately after the incident. Plaintiff concedes in his Deposition that he was escorted immediately to the outdoor exercise to begin decontamination. (Pl.'s Dep. 65:8-17.) Plaintiff was exposed to fresh air, was placed under a shower of water and rinsed with cool water. (Pl.'s Dep. 65:18-66:16, 75:4-21). Plaintiff's eyes were rinsed out and water ran down his body for a few minutes providing him with immediate relief. (Pl's Dep. 66:14-68:17.)

Plaintiff testified that MTA Peoples examined him and found his pulse rate, heartbeat, and vital signs normal. (Pl.'s Dep. 70:17-71:7.) Plaintiff complained that he was experiencing a burning sensation on his back due to an existing "tinea rash," but did not communicate serious pain or make a request to be seen by other medical staff. (Pl.'s Dep. 71:8-18.) Plaintiff was then cleared medically for return to this cell. (Pl.'s Dep. 73:17-20.)

The examining MTA prepared a Medical Report of Injury (CDC Form 7219) which indicated that the physical assessment of Plaintiff revealed no injuries, good skin color, no respiratory distress, clear lungs, and vital signs within normal limits. (Je Decl. ¶ 8, Exh. I.) The report noted that the treatment given was "I/M (inmate) decontaminated with large amount of cool running water to head & body. I/M placed in a well ventilated area." Id. The report further

noted that Plaintiff was seen by MTA Peoples within minutes after the time of the occurrence.[7] (Je Decl., Exh. H.)

Plaintiff testified that when he returned to his cell, he discovered the water was still off and he could not wash any residual pepper spray off of his body. (Pl.'s Dep. 78:15-21.) Plaintiff testified that his body including his genital area were burning. (Pl.'s Dep. 78:15-21.) As a result, Plaintiff alleged in his Opposition that the lack of water created a prolonged exposure to the pepper spray that constituted excessive force.

Defendants present evidence contrary to Plaintiff's assertion that the water stayed off until past midnight. Specifically, the First Level Response to Plaintiff's inmate appeal indicates that the water was turned on at 22:00 p.m. (Je Decl., ¶ 3, Exh. B, p. 8.) Despite this disagreement as to the time, however, Defendants argue that this fact is not material. Even if it is assumed that the water was not turned on until after midnight, Defendants contend that Plaintiff did not suffer sufficiently serious deprivation.

Defendants cite to evidence that establishes that Plaintiff's eyes were rinsed out and water ran down his body providing him with relief immediately after the spraying. (Pl's Dep. 66:14-68:17.) Although Plaintiff argues that he experienced a level 10 type of burning pain after he was returned to his cell, he concedes that he did not report this to MTA Peoples when he was examined nor did he request to see other medical staff. (Pl's Dep. 71:8-18.) At this time Plaintiff only noted the aggravation to his preexisting tinea rash. Id. Plaintiff also testified that his skin was warm, veins slightly raised, there was no skin loss or visible bleeding but his skin was somewhat sensitive to the touch. (Pl.'s dep. 79:14-80:8.) Plaintiff requested to see a doctor one to two days later and only requested more ointment for his tinea rash. (Pl.'s Dep. 109:5-11.) Plaintiff informed the Doctor that he had been pepper sprayed, and the Doctor examined him and found that his rash was a bit agitated but nothing else was out of the ordinary. (Pl.'s Dep. 110:4-7.) Plaintiff did not complain of the level 10 pain he endured over an extended period of time from the pepper spray.

---

[7] MTA People's report lists the time of the occurrence at 20:15 and that Plaintiff was seen at 20:20. (Je Decl., Exh. H.)

11

1    Defendants also provide evidence that the OC Pepper spray used on Plaintiff is a
2 biodegradable substance that does not require washing and that all symptoms should dissipate
3 within 45 minutes.  (Je. Decl., Exh. F); also LaLonde v. County of Riverside, 204 F.3d at 960
4 (noting that officers are trained to know that symptoms could last up to 45 minutes if left
5 untreated).  Where body fluids are concerned, universal precautions are recommended.  (Je.
6 Decl., Exh. F)  Decontamination following the use of OC pepper spray is accompanied by
7 exposing the individual to fresh moving air and flushing the affected area with cool water.  Id.
8 Here, Plaintiff was provided water, rinsed his eyes and water ran down his body for a few
9 minutes.  (Pl.'s Dep. 73:17-20.)

10   Despite the decontamination, Plaintiff stated that when he returned to his cell and realized
11 his water was off, he went through a "little mental thing like, oh, my water is off, and then that's
12 when it started getting worse."  (Pl.'s Dep. 79:5-7.)  Plaintiff states that he tried to get Officer
13 Kee's, Sgt. Griem and Phillips and Lt. Bloxom's attention but they did not see or hear him.
14 (Pl.'s Dep. 81:3-7.)  When Plaintiff was able to get the attention of Officer Fierro, Plaintiff only
15 asked that his water be turned back on.  (Pl.'s Dep. 81:20-22.)   When Plaintiff saw Officer
16 Maldonado he informed him that he needed his water turned on because the Sgt. told him to
17 wash the rest of the pepper spray off;  however, he did not inform him that he was experiencing
18 excruciating pain. (Pl.'s Dep. 84:23-25-85:1.)  Plaintiff testified that almost an hour later and at a
19 more than level 10 burning, he told Defendant Loomis in an "extreme courteous manner," that
20 his privates were burning and he needed his water turned back on.  (Pl.'s Dep. 87:13-15, 89:17-
21 19, 87:23-25.)  When asked whether Plaintiff should have relayed the level of his pain more
22 forcefully to Officer Loomis, he responded "What I said to him was more than sufficient."  (Pl.'s
23 Dep. 90:23-25.)  Plaintiff further conceded that Officer Loomis was aware that Plaintiff had been
24 decontaminated, examined by MTA Peoples and medically cleared for return to his cell. (Pl.'s
25 Dep. 93:8-10.)  Later, when Plaintiff saw Officer Kee, he repeatedly yelled "I need my water cut
26 on."  (Pl.'s Dep. 96:1; 96:18-23.)  Plaintiff again admitted that he did not specifically inform Kee
27 that he was in pain. (Pl.'s Dep. 97:9-13.)

28   Defendants contend that they did not use force in the form of prolonged exposure to

pepper spray to maliciously and sadistically inflict harm on Plaintiff.  The Court finds that Defendants have met their initial burden of informing the Court of the basis for their Motion, and identifying those portions of the record which they believe demonstrate the absence of a genuine issue of material fact.  The burden therefore shifts to Plaintiff to establish that a genuine issue as to any material fact actually does exist. See  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

As stated above, in attempting to establish the existence of this factual dispute, Plaintiff may not rely upon the mere allegations or denials of his pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank v. Cities Service. Co., 391 U.S. 253, 289 (1968); Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).

In Opposition,  Plaintiff complains that he should have been allowed to shower for up to 10 minutes.  However, there is no allegation in the First Amended Complaint concerning the adequacy of the decontamination procedure used, and thus, it will not be addressed.

Plaintiff also argues that there is no legitimate penal interest in leaving him in a "contaminated cell without running water." (Opposition at ¶ 52.)  However, the standard of review for excessive force is whether the force used was in an effort to restore or maintain discipline or for the wanton and malicious purpose of causing harm.  Plaintiff has presented no evidence that any of the Defendants intentionally delayed restoring water in his cell for the sole purpose of causing him harm.  In fact, the evidence before demonstrates the contrary.

Defendants have presented evidence that OC pepper spray is biodegradable, does not require washing and that symptoms should dissipate after 45 minutes. (Exh. F, Je Decl.)  This is contrary to Plaintiff's allegations that the pain continued to increase during the period after he returned to his cell - a period of almost 4 hours, according to Plaintiff.  The evidence before the Court further shows that each named Defendant wrote an incident report before they went off duty at 10:00 p.m, detailing the event, the subsequent decontamination and medical clearance. (Je Decl., Exh. H, 22-24).  Thus, each Defendant had knowledge that Plaintiff was decontaminated

1  and was physically well enough to be returned to his cell. Despite his decontamination and
2  subsequent "Level 10" burning, Plaintiff intentionally declined to inform MTA Peoples that his
3  back continued to burn. (Pl.'s Dep. 71:19-24.) Plaintiff further testified that he made contact
4  with the Defendants at some point in time following his exposure and subsequent
5  decontamination, however, he only requested that his water be turned on. Plaintiff did not
6  inform them that he was experiencing pain, that he was experience a "level 10" burning
7  sensation, that his pain was getting worse or that he needed further medical attention. (Exh. A,
8  81:21-22; 83:12-13; 81:13-15; 89:20-21; 90-15-16; 94:20; 95:10-11; 95:25-96:1; 96:20-21, Je
9  Decl.)

      Finally, Plaintiff conceded in his deposition that he felt fine up until he realized that his water was turned off then he had a "little mental thing" and then "it started getting worse." (Pl.'s Dep. 79:5-7.) As stated above, Plaintiff must come forward with evidence creating a disputed evidence of material fact and cannot rely on denials or allegations in his pleadings. Plaintiff presents no evidence demonstrating that the Defendants maliciously and sadistically allowed Plaintiff to continue to be exposed to pepper spray for the sole purpose of inflicting pain.

### 3. Qualified Immunity

As the Court has concluded that the Motion for Summary Judgment should be granted on the remaining excessive force claim, the Court declines to address the issue of qualified immunity.

## E. CONCLUSION AND RECOMMENDATION

Accordingly, the Court HEREBY RECOMMENDS that the Motion for Summary Judgment be GRANTED with respect to the Eighth Amendment excessive force claim [prolonged exposure to pepper spray] and that the case be DISMISSED in its entirety.

The Court further ORDERS that these Findings and Recommendations be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within THIRTY (30) days after being served with a copy of these Findings and Recommendations, any party may file written Objections with the

Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the Objections shall be served and filed within TEN (10) court days (plus three days if served by mail) after service of the Objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file Objections within the specified time may waive the right to appeal the Order of the District Court. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   October 31, 2006**             /s/ Sandra M. Snyder
icido3                                                     UNITED STATES MAGISTRATE JUDGE